**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| AMPAM Parks Mechanical, Inc., ) | |
| ) | |
|    Plaintiff, ) | |
| ) | Case No. |
| v. ) | |
| ) | |
| Allied World Surplus Lines Insurance Company, ) | |
| Aspen American Insurance Company, ) | |
| Homeland Insurance Company of New York, ) | |
| Fair American Insurance and Reinsurance Company, and ) | |
| Evanston Insurance Company, ) | |
| ) | |
|    Defendants. ) | |

---

**COMPLAINT FOR DECLARATORY JUDGMENT**

---

AMPAM Parks Mechanical Inc. ("AMPAM"), by and through its attorneys, Burke, Warren, MacKay & Serritella, P.C., and Valensi Rose PLC, hereby files its Complaint for Declaratory Judgment against Defendants Allied World Surplus Lines Insurance Company ("Allied World"), Aspen American Insurance Company ("Aspen"), Homeland Insurance Company of New York ("Homeland"), Fair American Insurance and Reinsurance Company ("Fair American"), and Evanston Insurance Company ("Evanston").

**NATURE OF THE CASE**

1.	In 2019, the owners of AMPAM Parks Mechanical, Inc., a Carson, California based plumbing and HVAC contractor, sold their interests to an employee stock ownership plan, for the company to become 100% employee-owned (the "AMPAM ESOP"). Understanding that these types of transactions sometimes lead to litigation, AMPAM procured a $25 Million tower of fiduciary insurance coverage for the defense and indemnification of these and other claims.

1

2. In late 2023, AMPAM received a demand letter from a participant in the AMPAM ESOP – Wilis Barrios – which it timely submitted to its primary carrier, Allied World. In response, Allied World concluded that Barrios' demand letter constituted a notice of circumstances which may reasonably be expected to give to rise to a Claim being made against an Insured. When Barrios filed a subsequent lawsuit in December 2023 alleging various violations of ERISA against AMPAM, its former shareholders and former/current directors, as well as the trustee of the AMPAM ESOP, Allied World agreed to defend the lawsuit pursuant to certain limitations.

3. First, Allied World asserted that Neil Brozen, the trustee of the AMPAM ESOP, was not an insured under its policy, such that it had no obligation to defend or indemnify him for losses incurred in the Barrios action. This position is contrary to the plain language of the policy.

4. Second, Allied World relied on a general regulatory coverage sublimit in its policy to assert that, because all claims filed by Barrios alleged violations of ERISA (as they must since ERISA preempts common law claims relating to ESOPs), a general limitation of the amount of coverage available for claims arising under regulations or statutes allowed Allied World to reduce coverage available from the $5 Million limit of liability of its policy to $1 Million for defense costs only. This position is contrary to the purpose of the policy and the law.

5. AMPAM purchased a very specific type of insurance coverage for claims specifically arising under ERISA, which must allege a violation of the ERISA statute and cannot be filed on any other basis. That coverage specifically provides for the defense and indemnification of such claims up to a $5 Million limit of liability and even provides specific coverage for penalties imposed under ERISA. AMPAM then purchased four more layers of coverage in $5 Million increments from four separate excess carriers to provide a total of $25 Million in coverage for fiduciary liability claims which alleged violations of ERISA.

6.    Due to Allied World's improper application of a $1 Million sublimit for defense costs only, AMPAM's excess carriers, Aspen, Homeland and Evanston have denied coverage completely (while Fair American has failed to even substantively respond to the claim).

7.    Due to Allied World's improper application of a broad, catch-all exclusion to take away the specific coverage that its policy is supposed to provide, the policy creates illusory coverage which could never provide full coverage for ERISA claims or any coverage for penalties imposed under ERISA, which are expressly covered.

8.    For these reasons, AMPAM seeks a declaration that: (1) Neil Brozen is an Insured under the primary policy issued by Allied World and is entitled to coverage; and (2) the regulatory coverage sublimit is inapplicable to the ERISA claims that have been brought against AMPAM such that it is entitled to $5 Million of coverage under the policy issued by Allied World and the subsequent $20 Million of coverage due under excess policies issued by Aspen, Homeland, Fair American and Evanston.

**PARTIES**

9.    Plaintiff AMPAM Parks Mechanical, Inc., is a Delaware corporation with its principal place of business located in Carson, Los Angeles County, California.

10.    Defendant Allied World Surplus Lines Insurance Company is an Arkansas corporation with its principal place of business located in Farmington, Connecticut.

11.    Defendant Aspen American Insurance Company is a Texas corporation with its principal place of business located in Rocky Hill, Connecticut.

12.    Defendant Homeland Insurance Company of New York is a New York corporation with its principal place of business located in Plymouth, Minnesota.

3

13.     Defendant Fair American Insurance and Reinsurance Company is a New York corporation with its principal place of business located in New York, New York.

14.     Defendant Evanston Insurance Company is an Illinois corporation, with its principal place of business located in Rosemont, Illinois.

## JURISDICTION AND VENUE

15.     Jurisdiction is proper in this Court, pursuant 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties, which are all corporations, and the matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000) exclusive of interest and costs.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim arose in this District, including that: (1) AMPAM, the plaintiff and named insured, has its principal place of business in this District; (2) the insurance policies at issue were issued by the Defendants to AMPAM in this District: (3) the insurance claims were made in this District; and (4) the wrongful denials and limitations of coverage to AMPAM, the insured, occurred in this District.

## FACTS

17.     AMPAM, based in Carson, California, is a residential plumbing and HVAC company, specializing in multi-family residential design-build construction projects.

18.     On July 15, 2019, the owners of AMPAM stock sold their stock to the AMPAM Parks Mechanical, Inc. Employee Stock Ownership Plan (the "AMPAM ESOP") in order for AMPAM to become a 100% employee-owned company (the "ESOP Transaction").

19.     Pursuant to the AMPAM Employee Stock Ownership Trust Agreement, Neil Brozen was appointed as trustee of the AMPAM ESOP. Pursuant to the Trust Agreement and other

agreements, AMPAM is obligated to indemnify Brozen for any loss he suffers resulting from his performance of services for the AMPAM ESOP.

20.    On August 8, 2023, the stock of AMPAM was sold to Canyonlands Purchaser, LLC pursuant to a Stock Purchase Agreement. The AMPAM ESOP was terminated thereafter in 2023.

*The Allied World Primary Policy*

21.    In 2021, Allied World issued a Management Liability Policy Package to AMPAM, Policy Number 0312-1082, with a policy period of November 1, 2021 to November 1, 2023 (the "Allied World Primary Policy" is attached as <u>Exhibit 1</u>).

22.    The Allied World Primary Policy provided: (1) Directors and Officers Coverage with a $5,000,000 limit of liability; and (2) Fiduciary Liability Coverage with a separate $5,000,000 limit of liability. [<u>Ex. 1</u>, p. 2.]

23.    Pursuant to the Fiduciary Liability Coverage Section, the Insuring Agreement states:

> **Insurer** shall pay on behalf of any **Insured** the **Loss** arising from a **Claim** first made during the **Policy Period** (or Discovery Period, if applicable) against such **Insured** for any **Wrongful Act**, and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions.

[Ex.1, p. 61.]

24.    Pursuant to the Fiduciary Liability Coverage Section, "**Insured**" means:

    a.  the Company;
    b.  Any Plan
    c.  Any Insured Person; and
    d.  any other person or entity in his, her or its capacity as a fiduciary, administrator or trustee of a Plan and included in the Definition of Insured by specific written endorsement attached to this Policy." [Ex. 1 at p. 64.]

25.    Pursuant to the Fiduciary Liability Coverage Section, an "**Insured Person**" is any "past, present or future natural person director, officer, trustee, general partner, management

committee member, member of board of managers, governor (or any foreign equivalent) of the Company; or Employee." [Ex. 1 at p. 64.]

26. Pursuant to the Fiduciary Liability Coverage Section, a **Plan** is defined as "any plan, fund, trust, program or **Non-Qualified Plan** regardless of whether or not it is subject to regulation under Title I of ERISA or any part thereof, or meets the requirements for qualification under Section 401 of the Internal Revenue Code of 1986, as amended, and which is," in relevant part "an **ESOP** that is included in the definition of **Plan** by written Endorsement attached to this Policy". [Ex. 1 at p. 67.]

27. Pursuant to the Fiduciary Liability Coverage Section, **ESOP** means (1) any employee stock ownership plan as defined in ERISA, or; (2) any other **Plan** under which investments are made in securities of, or issued by, the **Company**, if scheduled in an Endorsement to this Policy. [Ex. 1 at p. 63.]

28. Endorsement No. 6 to the Allied World Primary Policy states that the definition of **Plan** in the Fiduciary Liability Coverage Section shall include the AMPAM ESOP, provided that the Retention amount with respect to Claims arising out of or related to such plan shall be $350,000 for each and every Claim. [Ex. 1 at p. 11.]

29. Pursuant to the Fiduciary Liability Coverage Section, **Claim** means, among other things, a:

    a. Written demand for monetary, non-monetary or injunctive relief made against an Insured;

    b. Judicial, administrative or regulatory proceeding, whether civil or criminal, for monetary, non-monetary or injunctive relief commenced against an **Insured**,

including any appeal therefrom, which is commenced by…service of a complaint or similar proceeding. [Ex. 1 at p. 62.]

30.     Pursuant to the Fiduciary Liability Coverage Section, **Loss** means "damages, settlements or judgments…pre-judgment or post-judgment interest…cost or fees awarded in favor of the claimant…punitive and exemplary damages… and **Defense Costs**." [Ex. 1 at p. 64.]

31.     Pursuant to the Fiduciary Liability Coverage Section, **Loss** covered by the Allied World Primary Policy includes, among other things, "the five percent (5%) or less civil penalty imposed upon an **Insured** under Section 502(i) of ERISA;" and "the twenty percent (20%) or less civil penalty imposed upon an **Insured** under Section 502(l) of ERISA." ("Civil Penalty Losses"). [Ex. 1 at p. 64-65.]

32.     Pursuant to the Fiduciary Liability Coverage Section, **Loss** covered by the Allied World Primary Policy includes, among other things, liability assumed with or under an agreement or declaration of trust pursuant to which a **Plan** was established. [Ex. 1 at p. 69.]

33.     Pursuant to the Fiduciary Liability Coverage Section, **Wrongful Act** means any actual or alleged:

(a) breach of the responsibilities, obligations or duties imposed upon fiduciaries of a **Plan** by an **Employee Benefits Law**; by an **Insured**;

(b) negligent act, error or omission by an **Insured** in the **Administration** of a **Plan**;

(c) matter claimed against an **Insured Person** solely by reason of his or her service as a fiduciary of a **Plan**; or

(d) negligent hiring of either a third-party administrator of a **Plan** or a third-party administrator of **Benefits** provided under a **Plan**, by an **Insured**. [Ex. 1 at p. 68.]

34.     Pursuant to the Fiduciary Liability Coverage Section, **Employee Benefits Law** means "the Employee Retirement Income Security Act of 1974, or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state or local statutory law of the United States ("ERISA"), or any similar common or statutory law of any other jurisdiction anywhere in the world, to which a **Plan** is subject." [Ex. 1 at p. 63.]

35.     Endorsement No. 20 to the Allied World Primary Policy, titled "Regulatory Coverage Extension – Defense Costs Coverage Only; Sublimit Applies," amends the Directors & Officers and Fiduciary Liability Coverage Sections as follows:

> The Coverage Section shall not cover any **Loss** in connection with any **Claim** arising out of, based upon, or attributable to any actual or alleged violation of any local, state or federal administrative or regulatory statute, code, rule or regulation, or procedure as well as any and all **Claims** brought by or on behalf of any local, state or federal governmental body and/or any agency or subdivision thereof or by or on behalf of such governmental body and/or agency in the name of any other individual or entity; provided, however, that this Exclusion shall not apply to **Defense Costs**.

> The coverage provided by this Endorsement for **Defense Costs** is subject to a Sublimit of Liability of $1,000,000. Such Sublimit of Liability is part of, and not in addition to, the Limit of Liability applicable to the Fiduciary Liability Coverage Section set forth in Item 4.A. of the Declaration. (The "Regulatory Coverage Sublimit")[Ex. 1 at p. 35.]

*AMPAM's Excess Policies*

36.     In addition to the $5 Million in Fiduciary Liability Coverage which AMPAM purchased under the Allied World Primary Policy, AMPAM purchased a tower of four excess insurance policies, each with a $5 Million limit of liability, to provide Fiduciary Liability Coverage from Aspen American Insurance Company, Homeland Insurance Company of New York, Fair American Insurance and Reinsurance Company and Evanston Insurance Company (the "Excess Carriers").

*The Aspen Policy*

37.     Aspen American Insurance Company issued an Aspen XS Follow Form Excess Policy, Policy Number DSUMLXS000025-21, with an effective date of November 1, 2021 to November 1, 2023. The "Aspen Policy" is attached hereto as <u>Exhibit 2</u>.

38.     The Aspen policy affords up to $5 Million in coverage excess of $5 Million in underlying limits in the Allied World Primary Policy per claim. [Ex. 2 at p. 1.]

39.     The Limits of Liability under the Aspen Policy states:

The **Limits of Liability** referenced in Item 3. of the Declarations are the limits of the Insurer's liability for all covered claims and/or losses in excess of the **Underlying Limits**. Liability shall attach to the **Insurer** only after the insurers of the Underlying Policies, the Drop Down Insurers and/or the Insureds shall have paid covered loss in an amount equal to the full amount of the **Underlying Limits**. In the event of the exhaustion of all the **Underlying Limits** due to payments thereunder and upon satisfaction of any applicable retention, this **Policy** shall continue in force as primary insurance. The **Insurer** shall remain excess of the amount of the **Underlying Limits** and shall not drop down for any reason including, but not limited to: (1) non-payment to any extent of the **Underlying Limits**; (2) the existence of a sub-limit of liability in any **Underlying Policies** (unless specifically endorsed hereon); or (3) any **Underlying Policies** containing terms and conditions different from the **Followed Policy**. If the **Followed Policy** provides coverage that is subject to a sub-limit of liability, then unless this **Policy** is endorsed otherwise, this **Policy** shall not apply to any claim that is subject to such sub-limit, however, any such coverage paid by the insurers of the **Underlying Policies** shall be recognized solely for the purposes of eroding the **Underlying Limits**.
[Ex. 2 at p. 3.]

*The Homeland Policy*

40.     Homeland Insurance Company of New York issued a following form Excess Policy, Policy Number MMX-03060-21, with a Policy Period of November 1, 2021 to November 1, 2023. The "Homeland Policy" is attached hereto as <u>Exhibit 3</u>.

41.     The Homeland Policy affords up to $5 Million in coverage excess of $10 Million in the underlying limits in the Allied World Primary Policy and Aspen Policy per claim. [Ex. 3 at p. 5.]

9

*The Fair American Policy*

42.    Fair American Insurance issued an Excess Policy, Policy Number MLC-1000832-01 with a Policy Period of November 1, 2021 to November 1, 2023. The "Fair American Policy" is attached hereto as Exhibit 4.

43.    The Fair American Policy affords up to $5 Million in coverage excess of $15 Million in the underlying limits in the Allied World Excess Policy, Aspen Policy and Homeland Policy per claim. [Ex. 4 at p. 10.]

44.    The Fair American Policy further provides that:

> This Policy shall not apply to any coverage under the **Followed Policy** that is subject to a sublimit of insurance, but payment for such coverage in any manner described in the INSURING AGREEMENT section of this Policy shall reduce the **Underlying Limit** by the amount of such payment.
> [Ex. 4 at p. 1.]

*The Evanston Policy*

45.    Evanston Insurance Company issued an Excess Management Liability Insurance Policy, Policy Number MKLV3MXM000084 with a Policy Period of November 1, 2021 to November 1, 2023. The "Evanston Policy" is attached hereto as Exhibit 5.

46.    The Evanston Policy affords up to $5 Million in coverage excess of $20 Million in the underlying limits in the Allied World Excess Policy, Aspen Policy, Homeland Policy, and Fair American Policy per claim. [Ex. 5 at p. 10-11.]

47.    The Evanston Policy further provides that:

> If any **Underlying Policy(ies)** contains a specific grant of coverage that is subject to a sublimit of liability, then coverage under this Policy shall not apply to any claim which is otherwise subject to such grant of coverage. However, any loss which is paid under the **Underlying Policy(ies)** and which is subject to such sublimit of liability shall erode or exhaust the **Underlying Limit(s)** for purposes of this Policy.
> [Ex. 5 at 13.]

10

48.    The Aspen Policy, Homeland Policy, Fair American Policy and Evanston Policy are collectively the "Excess Policies."

49.    While the Allied World Primary Policy and Excess Policies were all initially issued for the policy period of November 1, 2021 through November 1, 2022, they were all extended by endorsement through November 1, 2023. [*See* Exs. 1 -5.]

*The Underlying Actions*

50.    In 2022 and 2023, AMPAM received letters from participants of the AMPAM ESOP requesting documents and other information relating to the AMPAM ESOP. AMPAM timely tendered those letters to its insurers.

51.    On October 18, 2023, a letter was sent by a law firm representing AMPAM ESOP participant Wilis Barrios to AMPAM's Plan Administrator, requesting documents and information relating to the AMPAM ESOP. AMPAM promptly tendered this letter to its insurers.

52.    Allied World treated notice of the October 18, 2023 correspondence as notice of circumstances "which may reasonably be expected to give to rise to a **Claim** being made against an **Insured**."

53.    Then, on December 28, 2023, Wilis Barrios, individually, as a purported class representative, and on behalf of the AMPAM ESOP, filed a lawsuit in the United States District Court for the Southern District of California, captioned *Barrios v. AMPAM Parks Mechanical, Inc.,* Case No. 3:23-cv-2357 (the "*Barrios* Litigation"). The Complaint in the *Barrios* Litigation is attached as Exhibit 6.

54.    The *Barrios* Litigation named as Defendants: (1) AMPAM; (2) Charles E. "Buddy" Parks III; (3) John D. Parks; (4); James Parks; (5) Jason Parks; (6) The AMPAM Board of Directors; (7) Neil Brozen; and (8) John and Jane Does 1-20.

11

55. The *Barrios* Litigation alleges that (1) Charles E. "Buddy" Parks III; (2) John D. Parks; (3); James Parks; (4) Jason Parks (at times, the "Parks Brothers") are and/or were senior executives of AMPAM.

56. The *Barrios* Litigation alleges that Neil Brozen served as trustee of the AMPAM ESOP.

57. The *Barrios* Litigation alleges that, in 2019, the Parks Brothers and other AMPAM owners collectively sold their interest in AMPAM to the AMPAM ESOP for $247 Million. The Complaint alleges that the purchase price was inflated, for various reasons, resulting in damage to the AMPAM ESOP and its participants because they were allegedly required to pay more than fair market value for their ownership of AMPAM.

58. Count I of the *Barrios* Litigation alleges a Prohibited Transaction in Violation of ERISA § 406(a), 29 U.S.C. § 1106(a), against Brozen, the Parks Brothers, and AMPAM.

59. Count II of the *Barrios* Litigation alleges a Prohibited Transaction in Violation of ERISA § 406(b), 29 U.S.C. § 1106(b), against (1) Charles E. "Buddy" Parks III; (2) John D. Parks; (3); James Parks; (4) Jason Parks.

60. Count III of the *Barrios* Litigation alleges Breach of Fiduciary Duties Under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), against (1) Neil Brozen, (2) Charles E. "Buddy" Parks III; (3) John D. Parks; (4); James Parks; (5) Jason Parks; (6) the other Board Defendants; and (7) AMPAM.

61. Count IV of the *Barrios* Litigation alleges Co-Fiduciary Liability Under ERISA § 405(a)(1) and (a)(3), 29 U.S.C. § 1105(a)(1) and (a)(3), against (1) Charles E. "Buddy" Parks III; (2) John D. Parks; (3) James Parks; (4) Jason Parks; (5) the other Board Defendants; and (6) AMPAM.

62.     Count V of the *Barrios* Litigation alleges Illegal Agreement to Exculpate Fiduciary Liability in violation of ERISA § 410(a), 29 U.S.C. § 1110(a), against (1) Neil Brozen, (2) Charles E. "Buddy" Parks III; and (3) AMPAM.

63.     In the *Barrios* Litigation, Plaintiffs sought the following remedies:

a.   Declare that Defendants have violated ERISA;

b.   Enjoin Defendants from engaging in further such violations of ERISA;

c.   Order Defendants to restore all losses resulting from their ERISA violations;

d.   Order the Seller Defendants (the Parks Brothers) to disgorge all profits in connection with the ESOP Transaction;

e.   Order other appropriate equitable relief, including but not limited to reforming or rescinding the Transaction, a surcharge against Defendants, an accounting for profits, and a constructive trust and/or equitable lien against any funds wrongfully held by and of the Defendants;

f.   Enjoin the Defendants from dissipating any of the proceeds they received from the ESOP Transaction held in their actual or constructive possession until the ESOP participants' rights can be adjudicated;

g.   Enjoin the Defendants from transferring or disposing of any of the proceeds they received from the ESOP Transaction to any person or entity, which would prejudice, frustrate, or impair the ESOP participants' ability to recover the same;

h.   Void the indemnification and defense provisions challenged in Count V;

i.   Require Defendants to pay attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g) and/or order payment of fees and expenses to

Plaintiff's counsel on the basis of the common benefit or common fund doctrine out of any money recovered for the Class;

j.   Award pre-judgment interest and post-judgment interest; and

k.   Award such other and further relief that the Court determines is appropriate pursuant to ERISA § 502(a)(2) and/or (a)(3), 29 U.S.C. § 1132(a)(2) and/or (a)(3), or pursuant to Rule 54(c) of the Federal Rules of Civil Procedure, or that is equitable and just.

*Allied World's Coverage Position*

64.   AMPAM promptly tendered the *Barrios* Litigation to Allied World and the Excess Carriers seeking coverage for AMPAM, the Parks Brothers, the Board of Directors and Neil Brozen.

65.   On February 21, 2024, Allied World acknowledged coverage for the *Barrios* Litigation under the Fiduciary Liability Coverage Section of the Allied World Primary Policy for: (1) AMPAM; (2) Charles E. "Buddy" Parks; (3) John D. Parks; (4) James Parks; (5) Jason Parks and (6) the unnamed members of the AMPAM Board (the "Approved Insureds"). The "Allied World February 2024 Coverage Letter" is attached as Exhibit 7.

66.   In the Allied World February 2024 Coverage Letter, Allied World acknowledged that the *Barrios* Litigation triggered Agreement A of the Fiduciary Liability Coverage Section of the Allied World Primary Policy for the Approved Insureds and the *Barrios* Litigation is deemed first made during the policy period of the Allied World Primary Policy because, under Section V.C. of the Policy's General Terms and Conditions, Allied World treated notice of the October 18, 2023 correspondence from counsel for Mr. Barrios seeking certain documents and information

regarding the ESOP as notice of circumstances "which may reasonably be expected to give rise to a **Claim** being made against an **Insured.**"

67.    Allied World consented to the retention of Groom Law Group and Procopio Law Firm to represent the Approved Insureds in the *Barrios* Litigation.

68.    Allied World also reserved its right to deny coverage for the Approved Insureds on several bases.

69.    In the Allied World February 2024 Coverage Letter, Allied World denied coverage for Neil Brozen, stating that "Mr. Brozen is not an **Insured Person** under the [Fiduciary Liability Coverage Section of the Allied World Primary Policy] as the trustee of the AMPAM ESOP, and no coverage is available under the FLCS for Mr. Brozen."

70.    Citing the Regulatory Coverage Sublimit, Allied World also limited the coverage available to the Approved Insureds to $1,000,000 for Defense Costs only.

71.    Therefore, rather than the full $5 Million limit of liability which AMPAM purchased in Fiduciary Liability Coverage under the Allied World Primary Policy for defense and indemnification (plus $20 Million in coverage under the Excess Policies), the Allied World February 2024 Coverage Letter notified AMPAM that Allied World would limit the available coverage to $1 Million for Defense Costs only, and would provide nothing for a settlement or judgment.

*The Ramirez Litigation*

72.    On May 16, 2024, Wilis Barrios voluntarily dismissed the *Barrios* Litigation, and his lawyers filed a new action that day captioned *Alfredo Ramirez, et al., v. AMPAM Parks Mechanical, Inc., et al.,* Case No. 5:24-cv-01038, in the U.S. District Court for the Central District

of California (the "*Ramirez* Litigation"). The Complaint filed in the *Ramirez* Litigation is attached as Exhibit 8.

73. The Complaint in the *Ramirez* Litigation named as Defendants: (1) AMPAM; (2) Charles E. "Buddy" Parks, III; (3) John D. Parks; (4) John G. Mavredakis; (5) the AMPAM Board of Directors; (6) Neil Brozen; and (7) John and Jane Does 1-10.

74. The Complaint in the *Ramirez* Litigation dropped claims against James Parks and Jason Parks, who were named in the *Barrios* Litigation, and added John Mavredakis, an alleged member of the AMPAM Board in 2019.

75. The Complaint in the *Ramirez* Litigation alleged the same five counts as in the *Barrios* Litigation, plus added counts for: (5) Equitable Relief under ERISA § 502(a)(3), U.S.C. § 1132(a)(3) against the Seller Defendants; and (7) Failure to Comply with California Labor Code Section 1198.5 against AMPAM.

76. The Complaint in the *Ramirez* Litigation sought similar remedies as were sought in the *Barrios* Litigation, plus a monetary judgment and attorneys' fees and costs pursuant to California Labor Code Section 1198.5.

77. AMPAM promptly tendered the *Ramirez* Litigation to Allied World and its Excess Carriers for coverage.

78. On June 27, 2024, Allied World acknowledged coverage for the *Ramirez* Litigation under the Fiduciary Liability Coverage Section of the Allied World Primary Policy for: (1) AMPAM; (2) Charles E. "Buddy" Parks; (3) John D. Parks; (4) John G. Mavredakis; (5) and the unnamed members of the AMPAM Board (the "Approved Insureds"). The "Allied World June 2024 Coverage Letter" is attached as Exhibit 9.

79.     The Allied World June 2024 Coverage Letter took substantially the same coverage positions as the Allied World February 2024 Coverage Letter.

80.     The Allied World June 2024 Coverage Letter deemed the *Ramirez* Litigation as first made during the policy period of the Allied World Primary Policy because of the submission of the October 18, 2023 Barrios correspondence which was treated as a notice of circumstances "which may reasonably be expected to give rise to a **Claim** being made against an **Insured.**"

81.     In the Allied World June 2024 Coverage Letter, Allied World again consented to the retention of Groom Law Group and Procopio Law Firm to represent the Approved Insureds in the *Barrios* Litigation.

82.     Allied World also reserved its right to deny coverage for the Approved Insureds on several bases.

83.     In the Allied World June 2024 Coverage Letter, Allied World again denied coverage for Neil Brozen, stating that "Mr. Brozen is not an **Insured Person** under the [Fiduciary Liability Coverage Section of the Allied World Primary Policy] as the trustee of the AMPAM ESOP, and no coverage is available under the FLCS for Mr. Brozen."

84.     Again citing the Regulatory Coverage Sublimit, Allied World also limited the coverage available to the Approved Insureds to $1,000,000 for Defense Costs only.

85.     Therefore, rather than the full $5 Million limit of liability which AMPAM had purchased in Fiduciary Liability Coverage under the Allied World Primary Policy for defense and indemnification (plus $20 Million in coverage under the Excess Policies), the Allied World June 2024 Coverage Letter notified AMPAM that Allied World would limit the available coverage to $1 Million for Defense Costs only, and would provide nothing for a settlement or judgment.

86.    The Allied World June 2024 Coverage Letter identified that AMPAM would be required to pay the first $350,000 in Defense Costs to satisfy its Retention, prior to Allied World being responsible to pay for any Defense Costs, up to a $1 Million limit of liability.

87.    AMPAM, through coverage counsel, promptly expressed disagreement with Allied World's denial of coverage for Neil Brozen, the trustee of the AMPAM ESOP and Allied World's application of the Regulatory Coverage Sublimit to limit coverage available to $1 Million for Defense Costs only.

88.    Allied World responded, standing on its coverage positions.

*The Excess Carriers' Positions*

89.    On August 29, 2024, Aspen denied coverage for the *Ramirez* Litigation under the Aspen Policy. The "Aspen Denial Letter" is attached hereto as Exhibit 10.

90.    Aspen denied coverage entirely for the *Ramirez* Litigation on the basis that its excess policy does not apply to any claim that is subject to a sub-limit of liability in any underlying policy. Therefore, as Allied World applied the Regulatory Coverage Sublimit to AMPAM's claim for the *Ramirez* Litigation, the Aspen Denial Letter states that the Aspen Policy does not afford any coverage for the *Ramirez* Litigation.

91.    In the event that the Regulatory Coverage Sublimit had not been improperly applied to limit coverage in the Allied World Primary Policy, then the Aspen Policy would be obligated to provide coverage for the *Ramirez* Litigation upon exhaustion of the Allied World Primary Policy.

92.    On March 6, 2025, Homeland denied coverage for the *Ramirez* Litigation under the Homeland Policy. The "Homeland Denial Letter" is attached hereto as Exhibit 11.

18

93.     Homeland also denied coverage entirely for the *Ramirez* Litigation on the basis that Allied World is providing sub-limited coverage with a limit of liability of a lesser amount that scheduled in the declarations of the Homeland Policy.

94.     In the event that the Regulatory Coverage Sublimit had not been improperly applied to limit coverage in the Allied World Primary Policy, then the Homeland Policy would be obligated to provide coverage for the *Ramirez* Litigation upon exhaustion of the Allied World Primary Policy and Aspen Policy.

95.     On May 5, 2025, Evanston denied coverage for the *Ramirez* Litigation under the Evanston Policy. The "Evanston Denial Letter" is attached hereto as Exhibit 12.

96.     Evanston also denied coverage entirely for the *Ramirez* Litigation on the basis that its excess policy does not apply to any claim that is subject to a sub-limit of liability in any underlying policy.

97.     In the event that the Regulatory Coverage Sublimit had not been improperly applied to limit coverage in the Allied World Primary Policy, then the Evanston Policy would be obligated to provide coverage for the *Ramirez* Litigation upon exhaustion of the Allied World Primary policy, Aspen Policy, Homeland Policy and Fair American Policy.

98.     To date, Fair American has not issued a coverage determination for the *Barrios* Litigation or *Ramirez* Litigation under the Fair American Policy.

*The First Amended Complaint*

99.     On September 13, 2024, Plaintiffs filed a First Amended Complaint in the *Ramirez* Litigation. The First Amended Complaint is attached as Exhibit 13.

19

100.    The First Amended Complaint added as Defendants: (1) Kushal B. Kapadia; (2) Ventura Trust Company; (3) James C. Wright III; (4) Kevin Dow; (5) James Ellis; (6) Steve Grosslight; and (7) Mike Matkins.

101.    The First Amended Complaint alleges that Kushal Kapadia sold his ownership interest to AMPAM in the ESOP Transaction, served on the AMPAM Board and is allegedly liable for Equitable Relief under ERISA § 502(a)(3) and 29 U.S.C. § 1132(a)(3) under Count V.

102.    The First Amended Complaint alleges that (1) James C. Wright III; (2) Kevin Dow; (3) James Ellis; (4) Steve Grosslight; and (5) Mike Matkins were, at various times, members of the Board of Directors of AMPAM.

103.    The First Amended complaint alleges, against the Board Defendants, Breach of Fiduciary Duties Under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B) (Count III); Co-Fiduciary Liability Under ERISA § 405(a)(1) and (a)(3), 29 U.S.C. § 1105(a)(1) and (a)(3) (Count IV); and Illegal Agreement to Exculpate Fiduciary Liability in violation of ERISA § 410(a), 29 U.S.C. § 1110(a) (Count VI).

104.    The First Amended Complaint alleges that Ventura Trust Company was trustee of the AMPAM ESOP along with Neil Brozen and alleges that same Counts I, III, and VI against Ventura Trust Company and Brozen.

105.    On October 11, 2024, Allied World issued a coverage letter relating to the First Amended Complaint in the *Ramirez* Litigation. The "Allied World October 2024 Coverage Letter" is attached as Exhibit 14.

106.    The Allied World October 2024 Coverage Letter extends coverage to (1) Kushal B. Kapadia; (2) James C. Wright III; (3) Kevin Dow; (4) James Ellis; (5) Steve Grosslight; and (6) Mike Matkins, who together with AMPAM, Charles E. "Buddy" Parks III, John D. Parks and John

20

G. Mavredakis are included in the "Approved Insureds." Allied World denied coverage for Ventura Trust Company.

107.   The Allied World October 2024 Coverage Letter took substantially the same coverage positions as the Allied World February 2024 Coverage Letter and Allied World June 2024 Coverage Letter.

108.   The Allied World October 2024 Coverage Letter again approved the Groom Law Group and Procopio Law Firm to represent the Approved Insureds.

109.   To date, Defense Costs incurred for the Approved Insureds have exceeded $350,000, thereby satisfying the Retention under the Applied World Primary Policy.

110.   AMPAM brings this action to obtain the full amount of coverage that it purchased under the Allied World Primary Policy and the Excess Policies.

## <u>COUNT I</u>
## REQUEST FOR DECLARATORY JUDGMENT THAT NEIL BROZEN IS AN INSURED UNDER ALLIED WORLD PRIMARY POLICY AND EXCESS POLICIES
## (ALL DEFENDANTS)

111.   Plaintiff AMPAM Parks Mechanical, Inc. restates and realleges Paragraph 1 through 110 of its Complaint as if fully restated herein.

112.   AMPAM is the Named Insured under the Allied World Primary Policy.

113.   AMPAM is the Named Insured under the Excess Policies.

114.   AMPAM paid all premiums due under Allied World Primary Policy and Excess Policies.

115.   As the Named Insured under the Allied World Primary Policy and Excess Policies, AMPAM has an actual interest in the Court's determination of the rights and obligations of all parties under the Allied World Primary Policy and Excess Policies.

116. Allied World's assertion that Neil Brozen is not an Insured under the Allied World Primary Policy for the *Barrios* Litigation and *Ramirez* Litigation creates an actual controversy between the parties.

117. Allied World's denial of coverage for Neil Brozen, trustee of the AMPAM ESOP, for the *Barrios* Litigation and *Ramirez* Litigation creates an actual controversy between the parties.

118. As Allied World's denial of coverage for Neil Brozen affects his ability to obtain coverage as an Insured under the Excess Policies, the Excess Carriers are necessary parties to this Count.

119. Any determination by the Court regarding Allied World's obligations to Neil Brozen under the Allied World Primary Policy will be binding upon the Excess Carriers.

120. Pursuant to the Allied World Primary Policy, Allied World has an obligation to defend and indemnify Neil Brozen as an Insured as the trustee of the AMPAM ESOP, for the *Barrios* Litigation and *Ramirez* Litigation on and after December 29, 2023, after the Insureds' cumulative satisfaction of the $350,000 Retention, up to the $5 Million Limit of Liability.

121. Pursuant to the Allied World Primary Policy, Allied World has an obligation to pay Loss incurred by AMPAM which was assumed under the trust agreement pursuant to which the AMPAM ESOP was established, which includes the defense and indemnity of Neil Brozen for the *Barrios* Litigation and *Ramirez* Litigation on and after December 29, 2023, after the Insureds' cumulative satisfaction of the $350,000 Retention, up to the $5 Million Limit of Liability.

122. Pursuant to their respective excess policies, Aspen, Homeland, Fair American and Evanston all have an obligation to defend and indemnify Neil Brozen as an Insured as the trustee of the AMPAM ESOP, for the *Barrios* Litigation and *Ramirez* Litigation on and after December 29, 2023, after the exhaustion of the Allied World Primary Policy.

123.    Pursuant to their respective excess policies, Aspen, Homeland, Fair American and Evanston, the Excess Carriers have an obligation to pay Loss incurred by AMPAM which was assumed under the trust agreement pursuant to which the AMPAM ESOP was established, which includes the defense and indemnity of Neil Brozen for the *Barrios* Litigation and *Ramirez* Litigation on and after December 29, 2023, after the exhaustion of the Allied World Primary Policy.

124.    Alternatively, AMPAM is entitled to a declaratory judgment setting forth the respective rights and obligations of the parties under the Allied World Primary Policy, Aspen Policy, Homeland Policy, Fair American Policy and Evanston Policy.

WHEREFORE, AMPAM Parks Mechanical, Inc. respectfully requests:

a.  A declaration that Neil Brozen is an Insured under the Fiduciary Liability Coverage Section of the Allied World Primary Policy for claims submitted for the *Barrios* Litigation and *Ramirez* Litigation;

b.  A declaration that, under the Allied World Primary Policy, Allied World is obligated to defend and indemnify Neil Brozen for the *Barrios* Litigation and *Ramirez* Litigation;

c.  A declaration that, under the Allied World Primary Policy, Allied World is obligated to reimburse AMPAM for all Defense Costs incurred for the defense of Neil Brozen in the defense of the *Barrios* Litigation and *Ramirez* Litigation on and after December 29, 2023;

d.  A declaration that, under the Allied World Primary Policy, Allied World is obligated to pay for all Defense Costs going forward for Neil Brozen for the

23

*Ramirez* Litigation up to and including the full $5 Million limit of liability of the Fiduciary Liability Coverage Section;

e. A declaration that, upon the exhaustion of the Allied World Primary Policy, Aspen, Homeland, Fair American and Evanston each are obligated to defend and indemnify Neil Brozen for the *Ramirez* Litigation up to and including the full $5 Million limit of liability of each of their respective policies;

f. In the alternative, a declaration of the respective rights and obligations of the parties pursuant to the Allied World Primary Policy and Excess Policies;

g. Reimbursement of its costs and fees to the extent permitted law; and

h. Such other and further relief as this Court deems just and proper.

## COUNT II
### REQUEST FOR DECLARATORY JUDGMENT THAT THE REGULATORY COVERAGE SUBLIMIT IS INAPPLICABLE (AGAINST ALL DEFENDANTS)

125.    Plaintiff AMPAM restates and realleges Paragraph 1 through 110 of its Complaint as if fully restated herein.

126.    AMPAM is the Named Insured under the Allied World Primary Policy.

127.    AMPAM is the Named Insured under the Excess Policies.

128.    AMPAM paid all premiums due under Allied World Primary Policy and Excess Policies.

129.    As the Named Insured under the Allied World Primary Policy and Excess Policies, AMPAM has an actual interest in the Court's determination of the rights and obligations of all parties under the Allied World Primary Policy and Excess Policies.

130.    Allied World's assertion that coverage for the Approved Insureds is limited to $1 Million in Defense Costs only, along with no indemnity coverage for the Approved Insureds, in the *Barrios* Litigation and *Ramirez* Litigation, creates an actual controversy between the parties.

131.    Allied World's assertion that the Regulatory Coverage Sublimit applies to limit coverage available to the Approved Insureds for the *Barrios* Litigation and *Ramirez* Litigation, creates an actual controversy between the parties.

132.    Aspen's assertion that it does not have a duty to defend and indemnify the Approved Insureds for the *Barrios* Litigation and *Ramirez* Litigation under the Aspen Policy creates an actual controversy between the parties.

133.    Homeland's assertion that it does not have a duty to defend and indemnify the Approved Insureds for the *Barrios* Litigation and *Ramirez* Litigation under the Homeland Policy creates an actual controversy between the parties.

134.    Evanston's assertion that it does not have a duty to defend and indemnify the Approved Insureds for the *Barrios* Litigation and *Ramirez* Litigation under the Aspen Policy creates an actual controversy between the parties.

135.    Fair American's failure to respond to AMPAM's request to defend and indemnify the Approved Insureds for the *Barrios* Litigation and *Ramirez* Litigation under the Fair American Policy creates an actual controversy between the parties.

136.    Pursuant to the Allied World Primary Policy, Allied World has an obligation to defend and indemnify AMPAM and the Approved Insureds (plus Neil Brozen as alleged above), for the *Barrios* Litigation and *Ramirez* Litigation on and after December 29, 2023, after satisfaction of the $350,000 Retention, up to the $5 Million Limit of Liability.

137. Pursuant to the Aspen Policy, Aspen has an obligation to defend and indemnify AMPAM and the Approved Insureds (plus Neil Brozen as alleged above), for the *Barrios* Litigation and *Ramirez* Litigation on and after December 29, 2023, after the exhaustion of the Allied World Primary Policy.

138. Pursuant to the Homeland Policy, Homeland has an obligation to defend and indemnify AMPAM and the Approved Insureds (plus Neil Brozen as alleged above), for the *Barrios* Litigation and *Ramirez* Litigation on and after December 29, 2023, after the exhaustion of the Allied World Primary Policy and Aspen Policy.

139. Pursuant to the Fair American Policy, Fair American has an obligation to defend and indemnify AMPAM and the Approved Insureds (plus Neil Brozen as alleged above), for the *Barrios* Litigation and *Ramirez* Litigation on and after December 29, 2023, after the exhaustion of the Allied World Primary Policy, Aspen Policy and Homeland Policy.

140. Pursuant to the Evanston Policy, Evanston has an obligation to defend and indemnify AMPAM and the Approved Insureds (plus Neil Brozen as alleged above), for the *Barrios* Litigation and *Ramirez* Litigation on and after December 29, 2023, after the exhaustion of the Allied World Primary Policy, Aspen Policy, Homeland Policy and Fair American Policy.

141. Alternatively, AMPAM is entitled to a declaratory judgment setting forth the respective rights and obligations of the parties under the Allied World Primary Policy, Aspen Policy, Homeland Policy, Fair American Policy and Evanston Policy.

WHEREFORE, AMPAM Parks Mechanical, Inc. respectfully requests:

    a. A declaration that, under the Allied World Primary Policy, Allied World is obligated to defend and indemnify (1) AMPAM; (2) Charles E. "Buddy" Parks III, (3) John D. Parks; (4) James Parks; (5) Jason Parks; and (6) Neil Brozen for

26

the *Barrios* Litigation up to and including the full $5 Million limit of liability of the Fiduciary Liability Coverage Section;

b. A declaration that, under the Allied World Primary Policy, Allied World is obligated to defend and indemnify (1) AMPAM; (2) Charles E. "Buddy" Parks III, (3) John D. Parks; (4) John G. Mavredakis; (5) Kushal B. Kapadia; (6) James C. Wright III; (7) Kevin Dow; (8) James Ellis; (9) Steve Grosslight; (10) Mike Matkins and (11) Neil Brozen for the *Ramirez* Litigation up to and including the full $5 Million limit of liability of the Fiduciary Liability Coverage Section;

c. A declaration that the Regulatory Coverage Sublimit is inapplicable to limit coverage for the *Barrios* Litigation and *Ramirez* Litigation;

d. A declaration that, under the Allied World Primary Policy, Allied World is obligated to reimburse AMPAM for all Defense Costs incurred for the defense of (1) AMPAM; (2) Charles E. "Buddy" Parks III, (3) John D. Parks; (4) James Parks; (5) Jason Parks; (6) John G. Mavredakis; (7) Kushal B. Kapadia; (8) James C. Wright III; (9) Kevin Dow; (10) James Ellis; (11) Steve Grosslight; (12) Mike Matkins and (13) Neil Brozen in the defense of the *Barrios* Litigation and *Ramirez* Litigation on and after December 29, 2023;

e. A declaration that, under the Allied World Primary Policy, Allied World is obligated to pay for all Defense Costs going forward for (1) AMPAM; (2) Charles E. "Buddy" Parks III, (3) John D. Parks; (4) John G. Mavredakis; (5) Kushal B. Kapadia; (6) James C. Wright III; (7) Kevin Dow; (8) James Ellis; (9) Steve Grosslight; (10) Mike Matkins and (11) Neil Brozen for the *Ramirez*

27

Litigation up to and including the full $5 Million limit of liability of the Fiduciary Liability Coverage Section;

f.  A declaration that, upon the exhaustion of the Allied World Primary Policy, Aspen, Homeland, Fair American and Evanston each are obligated to defend and indemnify (1) AMPAM; (2) Charles E. "Buddy" Parks III, (3) John D. Parks; (4) John G. Mavredakis; (5) Kushal B. Kapadia; (6) James C. Wright III; (7) Kevin Dow; (8) James Ellis; (9) Steve Grosslight; (10) Mike Matkins and (11) Neil Brozen for the *Ramirez* Litigation up to and including the full $5 Million limit of liability of their respective policies;

g.  In the alternative, a declaration of the respective rights and obligations of the parties pursuant to the Allied World Primary Policy and Excess Policies;

h.  Reimbursement of its costs and fees to the extent permitted law; and

i.  Such other and further relief as this Court deems just and proper.

## COUNT III
## BREACH OF CONTRACT
## (AGAINST DEFENDANT ALLIED WORLD)

142.  Plaintiff AMPAM Parks Mechanical, Inc. restates and realleges Paragraph 1 through 110 of its Complaint as if fully restated herein.

143.  AMPAM is the Named Insured under the Allied World Primary Policy.

144.  AMPAM paid all premiums due under the Allied World Primary Policy.

145.  The Allied World Primary Policy is a valid and enforceable contract.

146.  AMPAM has satisfied all obligations under the Allied World Primary Policy.

28

147.   Allied World breached the Allied World Primary Policy by failing to fully defend and indemnify AMPAM and the Approved Insureds for the *Barrios* Litigation and *Ramirez* Litigation.

148.   Allied World breached the Allied World Primary Policy by failing to pay all amounts owed to AMPAM and the Approved Insureds for the *Barrios* Litigation and *Ramirez* Litigation.

149.   Allied World breached the Allied World Primary Policy by failing to defend and indemnify Neil Brozen for the *Barrios* Litigation and *Ramirez* Litigation.

150.   Allied World breached the Allied World Primary Policy by failing to pay all amounts owed for the Defense Costs incurred by Neil Brozen to defend the *Barrios* Litigation and *Ramirez* Litigation.

151.   Allied World's breach of the Allied World Primary Policy has proximately caused damages to AMPAM in the amount of costs expended to defend Neil Brozen in the *Barrios* Litigation and *Ramirez* Litigation in excess of $500,000, to date, and rising, plus consequential damages and costs of this suit, to be determined at trial.

WHEREFORE, AMPAM Parks Mechanical, Inc. respectfully requests entry of a judgment against Allied World Surplus Lines Insurance Company on Count III of its Complaint by awarding AMPAM Parks Mechanical, Inc. and the Approved Insureds their actual and consequential damages, interest and costs, resulting from Allied World's breaches of the Allied World Primary Policy, in an amount in excess of $500,000, to be determined at trial, and such other and further relief as this Court deems just and proper.

Date: July 2, 2025

Respectfully submitted:

David Krol
david.krol@vrmlaw.com
Valensi Rose PLC
1888 Century Park East, Suite 1100
Los Angeles, CA 90067
(310) 277-8011 (telephone)
(310) 277-1706 (facsimile)


        /s/  Blake Roter
Christopher E. Kentra (IL #6211295)
ckentra@burkelaw.com
*Pro Hac Vice Application Forthcoming*
Blake A. Roter (IL #6310047)
broter@burkelaw.com
*Pro Hac Vice Application Forthcoming*
Burke, Warren, MacKay & Serritella, P.C.
330 N. Wabash Avenue, Suite 2100
Chicago, IL 60611
(312) 840-7000 (telephone)
(312) 840-7900 (facsimile)

*Counsel for Plaintiff AMPAM Parks Mechanical, Inc.*

30