UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 25-6047 PA (MARx) | Date | November 5, 2025 |
|---|---|---|---|
| Title | AMPAM Parks Mechanical, Inc. v. Allied World Surplus Lines Insurance Company, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Kamilla Sali-Suleyman | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS - COURT ORDER

Before the Court is a Motion to Dismiss filed by defendant Allied World Surplus Lines Insurance ("Allied World" or "Defendant"). (Docket No. 55 ("Motion").) Allied World seeks to dismiss all claims asserted against it in the operative First Amended Complaint ("FAC") filed by plaintiff AMPAM Parks Mechanical, Inc. ("Plaintiff"). The Motion is fully briefed. (Docket Nos. 70, 74.) Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for October 27, 2025 at 1:30 p.m. was vacated, and the matter taken off calendar.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This is an insurance coverage dispute over which the Court possesses diversity jurisdiction. This action involves Plaintiff's fiduciary liability insurance coverage for two lawsuits brought against AMPAM and others, alleging violations of the Employee Retirement Income Security Act ("ERISA") in connection with AMPAM's Employee Stock Ownership Program ("ESOP").

### A.  The AMPAM ESOP

In July 2019, the owners of AMPAM, a plumbing and HVAC contractor, sold their interests to an employee stock ownership plan (the AMPAM ESOP) so the company could become 100% employee-owned. (Docket No. 47, FAC ¶ 1.) Pursuant to the AMPAM Employee Stock Ownership Trust Agreement (the "Trust Agreement"), Neil Brozen ("Brozen") was appointed trustee of the AMPAM ESOP. (Id. ¶ 19.) According to the FAC, AMPAM assumed an obligation to indemnify Brozen under the Trust Agreement and/or other agreements. (See id. ¶¶ 19 ("[P]ursuant to the Trust Agreement and other agreements, AMPAM is obligated to indemnify Brozen for any loss he suffers resulting from his performance of services for the AMPAM ESOP."); 128 (alleging that AMPAM assumed an obligation under the Trust Agreement to defend and indemnify Brozen).) In August 2023, the stock of AMPAM was sold

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 25-6047 PA (MARx) | Date | November 5, 2025 |
|---|---|---|---|
| Title | AMPAM Parks Mechanical, Inc. v. Allied World Surplus Lines Insurance Company, et al. | | |

to Canyonlands Purchaser, LLC pursuant to a Stock Purchase Agreement, and the AMPAM ESOP was terminated. (Id. ¶ 20.)

> **B.   The Allied World Management Liability Package Policy**

In 2021, Allied World issued a Management Liability Policy Package to AMPAM, Policy Number 0312-1082, with a policy period of November 1, 2021 to November 1, 2023 (the "Policy"). (FAC ¶ 21 & Ex. 1.) That policy package included both (1) Directors and Officers Coverage with a $5 million limit of liability; and (2) Fiduciary Liability Coverage with a separate $5 million limit of liability. The Fiduciary Liability Coverage Section of the Policy sets forth the terms relevant to this action.

> 1.   Insuring Agreement and Definitions

Section I, Part A of the Policy (titled "Fiduciary Liability Coverage") provides that Allied World "shall pay on behalf of any Insured the Loss arising from a Claim first made during the Policy Period (or Discovery Period, if applicable) against such Insured for any Wrongful Act . . . ." (FAC, Ex. 1 at p. 62.)[1]

The Policy defines "Insured" to mean the Company (AMPAM), any Plan, any Insured Person, or "any other person or entity in his, her or its capacity as a fiduciary, administrator or trustee of a Plan and included in the Definition of Insured by specific written endorsement attached to this Policy." (Id. at p. 65.) "Insured Person" is defined as any "past, present or future natural person director, officer, trustee, general partner, management committee member, member of board of managers, governor (or any foreign equivalent) of the Company; or Employee." (Id.) The Policy defines "Plan" to include, among other things, "an ESOP that is included in the definition of Plan by written Endorsement attached to this Policy." (Id. at p. 67.) Endorsement No. 6 to the Policy incorporates the AMPAM ESOP into the definition of Plan. (See id. at p. 11.)

The Policy defines "Claim" to include, among other things, a "written demand for monetary, non-monetary, or injunctive relief made against an Insured," including in a judicial proceeding initiated through the filing of a complaint. (Id. at p. 63.) The Policy defines "Loss" to include, among other things, "damages, settlements or judgments," "pre-judgment or post-judgment interest," and "cost or fees awarded in favor of the claimant," and "Defense Costs." (Id. at p. 65.) "Defense Costs," is defined to include, among other things, "reasonable

---

[1]   Citations to page numbers refer to the PDF pagination at Docket No. 47-1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 25-6047 PA (MARx) | Date | November 5, 2025 |
| Title | AMPAM Parks Mechanical, Inc. v. Allied World Surplus Lines Insurance Company, et al. | | |

and necessary fees, costs, charges or expenses resulting from the investigation, defense or appeal of a Claim." (Id. at p. 64.) The Policy defines "Wrongful Act" to mean "any actual or alleged: (1) breach of the responsibilities, obligations or duties imposed upon fiduciaries of a Plan by an Employee Benefits Law; by an Insured; (2) negligent act, error or omission by an Insured in the Administration of a Plan; (3) matter claimed against an Insured Person solely by reason of his or her service as a fiduciary of a Plan; or (4) negligent hiring of either a third-party administrator of a Plan or a third-party administrator of Benefits provided under a Plan, by an Insured." (Id. at p. 69.)

       2.      <u>Exclusions and Endorsement No. 20</u>

Section III the Policy (titled "Exclusions") provides that the Policy "shall not cover any Loss in connection with any Claim" that falls within various exclusions. Relevant here, Part D of this Section ("Exclusion D") excludes coverage for any Loss in connection with any Claim "alleging, arising out of, based upon or attributable to the liability of others, assumed by any Insured, under any express contract or agreement, either oral or written; provided however, that this Exclusion shall not apply: . . . if the liability was assumed in accordance with or under the agreement or declaration of trust pursuant to which a Plan was established . . . ." (Id. at p. 70.)

In addition, Endorsement No. 20 amends the Exclusions section of the Policy to add:

> The Coverage Section shall not cover any Loss in connection with any Claim arising out of, based upon, or attributable to any actual or alleged violation of any local, state or federal administrative or regulatory statute, code, rule or regulation, or procedure as well as any and all Claims brought by or on behalf of any local, state or federal governmental body and/or any agency or subdivision thereof or by or on behalf of such governmental body and/or agency in the name of any other individual or entity; provided, however, that this Exclusion shall not apply to Defense Costs.

(Id. at p. 35.) Endorsement No. 20 also states, "The coverage provided by this Endorsement for Defense Costs is subject to a Sublimit of Liability of $1,000,000. Such Sublimit of Liability is part of, and not in addition to, the Limit of Liability applicable to the Fiduciary Liability Coverage Section set forth in Item 4.A. of the Declaration." (Id.)

      C.      <u>**Plaintiff's Excess Policies**</u>

In addition to the $5 Million in Fiduciary Liability Coverage that Plaintiff purchased under the Policy, Plaintiff purchased a tower of four excess insurance policies from defendants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

| Case No. | CV 25-6047 PA (MARx) | Date | November 5, 2025 |
|---|---|---|---|
| Title | AMPAM Parks Mechanical, Inc. v. Allied World Surplus Lines Insurance Company, et al. | | |

Aspen American Insurance Company, Homeland Insurance Company of New York, Fair American Insurance and Reinsurance Company and Evanston Insurance Company (collectively the "Excess Insurers"), with each excess policy providing additional fiduciary liability coverage with a $5 Million limit of liability. (See FAC ¶¶ 36–49.)

### D. The Underlying Lawsuits and Coverage

In October 2023, AMPAM received a demand letter from a participant in the AMPAM ESOP, Wilis Barrios ("Barrios"), which it submitted to Allied World. (FAC ¶ 51.) Allied World accepted Barrios' demand letter as a notice of circumstances that may reasonably be expected to give rise to a Claim. (Id. ¶ 52.) Barrios subsequently filed a lawsuit in December of 2023 in the United States District Court for the Southern District of California, Barrios v. AMPAM Parks Mechanical, Inc., Case No. 3:23-cv-2357 (the "Barrios Action"). (Id. ¶ 53.)

In the Barrios Action, the plaintiff alleged that several senior executives at AMPAM, including Charles E. "Buddy" Parks, John D. Parks, James Parks, and Jason Parks (collectively the "Parks Brothers"), hand-picked Brozen as trustee of the AMPAM ESOP but used the ESOP governance structure to retain control over AMPAM and Brozen and to force Brozen to carry out the wishes of the Parks Brothers and other AMPAM insiders. (See id., Ex. 6 ¶¶ 6–7.) The plaintiff alleged that in 2019, the Parks Brothers, Brozen, and other AMPAM owners orchestrated and carried out a transaction in which the ESOP purchased the Parks Brothers' and other AMPAM owners' interest in the company at an inflated price of $247 million. He alleged that this transaction served the sellers' interests and allowed the Parks Brothers to retain a hidden ownership interest and control over AMPAM, and that the transaction harmed the interests of the ESOP and its participants because they were required to pay more than fair market value for their ownership of AMPAM, because they obtained little control over the company, and because the company's operations were impaired by an enormous debt load that the ESOP and AMPAM took on to fund the transaction. (Id. ¶ 57; see id., Ex. 6 ¶¶ 8–23.)

The complaint in the Barrios Action named AMPAM, the Parks Brothers, the AMPAM Board of Directors, and Brozen as defendants and asserts claims for violations of ERISA, breach of fiduciary duties under ERISA, and an illegal agreement under ERISA. (See id. ¶¶ 53–63 & Ex. 6.) Allied World agreed to defend AMPAM, the Parks Brothers, and the unnamed members of the Board of Directors in the Barrios Action, but it denied coverage for Brozen, stating that he is not an Insured Person under the Policy. (Id. ¶¶ 66, 69 & Ex. 7.) Allied World also indicated that coverage for the Barrios Action was limited to up to $1 million in Defense Costs only, citing the sublimit set forth under Endorsement No. 20 to the Policy. (See id. ¶¶ 70–71.)

On May 16, 2024, Barrios voluntarily dismissed his suit. On the same day, two other AMPAM ESOP participants, Alfredo Ramirez and Ramón Santos Castro, represented by the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 25-6047 PA (MARx) | Date | November 5, 2025 |
| Title | AMPAM Parks Mechanical, Inc. v. Allied World Surplus Lines Insurance Company, et al. | | |

same counsel as Barrios, filed a new action in this district, Ramirez v. AMPAM Parks Mechanical, Inc., Case No. 5:24-cv-01038 (the "Ramirez Action"). (FAC ¶ 72 & Ex. 8.) The Ramirez Action is based on the same underlying allegations and asserts the same causes of action for violations of ERISA as asserted in the Barrios Action, as well as additional causes of action for equitable relief under ERISA and failure to comply with the California Labor Code. (Id. ¶ 75 & Ex. 8.) The Complaint in the Ramirez Action names largely the same defendants as in the Barrios Action, except that the complaint in the Ramirez Action no longer asserts claims against of the Parks Brothers and names one alleged member of the AMPAM Board as a defendant. (Id. ¶ 74 & Ex. 8.) Upon notice of the Ramirez Action, Allied World deemed the Action as first made during the policy period (based on its connection to the October 2023 demand letter from Barrios). (Id. ¶ 80.) Allied World agreed to defend AMPAM, the Parks Brothers, and other AMPAM executives, but again denied coverage for Brozen, and indicated that coverage would be limited to $1 million in Defense Costs only based on the sublimit set forth in Endorsement No. 20. (See id. ¶¶ 78–85 & Ex. 9.)

Plaintiff also sought coverage under the Excess Insurers' policies. Three of the Excess Insurers denied coverage entirely for the Ramirez Action on the basis that the excess policy does not apply to any claim that is subject to a sublimit of liability in any underlying policy, and one of the Excess Insurers has not yet issued a coverage determination. (FAC ¶¶ 89–98.)[2]

### E. Procedural History

Plaintiff initiated this action on July 2, 2025, against Allied World and the Excess Insurers (collectively "Defendants"). Plaintiff filed the operative FAC on September 9, 2025. The FAC asserts two claims for declaratory judgment against all Defendants (Claims One and Two) and a breach of contract claim against Allied World (Claim Three). In Claim One, Plaintiff seeks a declaration stating, among other things, that Brozen is an Insured under the Policy, that Allied World is obligated to defend and indemnify Brozen for the Barrios and Ramirez Actions (jointly the "Lawsuits"), and that Allied World is obligated to reimburse AMPAM for Defense Costs incurred defending Brozen. In Claim Two, Plaintiff seeks a

---

[2] The plaintiffs in the Ramirez Action subsequently filed a first amended complaint and then the operative second amended complaint. (FAC ¶¶ 99, 109 & Exs. 13, 15.). Allied World extended coverage to additional members of the AMPAM Board of Directors named in the first amended complaint. (Id. ¶ 102, 106.) The second amended complaint asserts the same causes of action for violation of ERISA but does not raise the state law causes of action alleged in the initial complaint. (See id. ¶ 113 & Ex. 15.) The FAC alleges that Plaintiff has notified each Defendant about the second amended complaint in the Ramirez Action but that to date no Defendant has issued a coverage position. (Id. ¶ 115.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 25-6047 PA (MARx) | Date | November 5, 2025 |
|---|---|---|---|
| Title | AMPAM Parks Mechanical, Inc. v. Allied World Surplus Lines Insurance Company, et al. | | |

declaration stating, among other things, that Allied World is obligated to indemnify all defendants named in the Lawsuits up to and including the full $5 million limit of liability under the Policy, that Endorsement No. 20 is inapplicable to coverage for the Lawsuits, and that Allied World must reimburse AMPAM for Defense Costs incurred. In Count Three, Plaintiff asserts that Allied World breached the Policy by failing to defend and indemnify Brozen for the Lawsuits; by failing to pay all amounts owed for the defense costs incurred by Brozen to defend the Lawsuits; and by failing to fully defend and indemnify Plaintiff and the other named defendants in the Lawsuits up to the $5 million limit of liability under the Policy. (See id. ¶¶ 149–158.) Allied World moves to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[3]

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6) Motion to Dismiss

Generally, plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e). The purpose of Rule 8(a)(2) is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957)).

However, in Twombly, the Supreme Court rejected the notion that "a wholly conclusory statement of [a] claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." Twombly, 550 U.S. at 561, 127 S. Ct. at 1968 (internal quotation omitted). Instead, the Court adopted a "plausibility standard," in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]." Id. at 556, 127 S. Ct. at 1965. For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555, 127 S. Ct. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235-36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion

---

[3] The Excess Insurers have also filed a motion to dismiss, but that motion has not been fully briefed, and it is contingent on the Court granting Allied World's Motion. (See Docket No. 77 at p. 3 ("[I]f the Allied World Motion to Dismiss is granted, the Excess Insurers respectfully request that the Court dismiss them from this action with prejudice as well.").)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 25-6047 PA (MARx) | Date | November 5, 2025 |
| Title | AMPAM Parks Mechanical, Inc. v. Allied World Surplus Lines Insurance Company, et al. | | |

[of] a legally cognizable right of action") (alteration in original)); Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002) ("All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.") (quoting Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1964-65 (internal quotations omitted). In construing the Twombly standard, the Supreme Court has advised that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

  **B.**  **General Principles of Insurance Coverage Law**

  This diversity case is governed by California law. See Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008). "Interpretation of insurance contracts under California law requires us to employ general principles of contract interpretation." Id. (citing MacKinnon v. Truck Ins. Exch., 31 Cal.4th 635 (2003), as modified on denial of reh'g (Sept. 17, 2003); Safeco Ins. Co. of Am. v. Robert S., 26 Cal.4th 758 (2001)). The "mutual intention of the parties at the time the contract is formed" governs its interpretation. MacKinnon, 31 Cal. 4th at 647 (citing Cal. Civ. Code § 1636). In determining this mutual intention "[t]he rules governing policy interpretation require us to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." Hartford Cas. Ins. Co. v. Swift Distribution, Inc., 59 Cal. 4th 277, 288 (2014) (quoting Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 18 (1995)). Courts must also "interpret the language in context, with regard to its intended function in the policy." Id. (citing Bank of the West v. Superior Court, 2 Cal.4th 1254, 1265 (1992)). "A policy provision is ambiguous only if it is susceptible to two or more reasonable constructions despite the plain meaning of its terms within the context of the policy as a whole." Palmer v. Truck Ins. Exch., 21 Cal. 4th 1109, 1115 (1999).

  Generally, liability insurance policies "provide that the insurer has a duty to indemnify the insured for those sums that the insured becomes legally obligated to pay as damages for a covered claim." Aerojet-General Corp. v. Transport Indem. Co., 17 Cal. 4th 38, 56 (1997). An insurer's duty to indemnify "runs to claims that are actually covered, in light of the facts proved. It arises only after liability is established and as a result thereof." Id. The burden is on an insured to establish that the occurrence forming the basis of its claim is within the basic scope of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 25-6047 PA (MARx) | Date | November 5, 2025 |
|---|---|---|---|
| Title | AMPAM Parks Mechanical, Inc. v. Allied World Surplus Lines Insurance Company, et al. | | |

insurance coverage. Aydin Corp. v. First State Ins. Co., 18 Cal. 4th 1183 (1998), as modified on denial of reh'g (Oct. 14, 1998) (citations omitted). Once an insured has satisfied this burden, the burden shifts to the insurer to show that the claim is specifically excluded. Id. (citations omitted). Liability insurance policies also contain "a duty to defend the insured in any action brought against the insured seeking damages for a covered claim." Aerojet-General, 17 Cal. 4th at 58. "[T]he insurer's duty to defend is broader than its duty to indemnify." Buss v. Superior Court, 16 Cal. 4th 35, 46 (1997). The duty to defend "runs to claims that are merely potentially covered, in light of facts alleged or otherwise disclosed. It arises as soon as tender is made, before liability is established and apart therefrom." Id. (citations omitted).

"Ambiguities or uncertainties are resolved against the insurance company so that, if feasible, the policy will indemnify the loss to which the insurance relates. These rules exist to protect the insured's reasonable expectation of coverage." Employers Mut. Cas. Co., 169 Cal. App. 4th at 348. "Coverage clauses are interpreted broadly and exclusionary clauses are interpreted narrowly." Employers Mut. Cas., 169 Cal. App. 4th at 348. However, "'although exclusions are construed narrowly and must be proven by the insurer, the burden is on the insured to bring the claim within the basic scope of coverage, and (unlike exclusions) courts will not indulge in a forced construction of the policy's insuring clause to bring a claim within the policy's coverage.'" Waller, 11 Cal. 4th at 16 (quoting Collin v. Am. Empire Ins. Co., 21 Cal. App. 4th 787, 803 (1994)).

## III. DISCUSSION

### A. Coverage of Defense and Indemnification of Brozen

The FAC alleges that under the Policy, Defendant "has an obligation to defend and indemnify Neil Brozen as an Insured as the trustee of the AMPAM ESOP," for the Lawsuits. (FAC ¶ 127.) The FAC also alleges that under the Policy, Defendant "has an obligation to pay Loss incurred by AMPAM which was assumed under the trust agreement pursuant to which the AMPAM ESOP was established, which includes the defense and indemnity of Neil Brozen" for the Lawsuits. (Id. ¶ 128.) On this basis, Plaintiff seeks declaratory relief in Count One and alleges a breach of contract claim in Count Three.

Defendant argues that because Brozen is not an Insured under the Policy, no coverage is available for his defense or indemnification, and Plaintiff cannot state a claim on that basis. Specifically, Defendant asserts that Brozen is not an Insured Person within the meaning of the Policy because he was not an employee of AMPAM but instead was an independent trustee contracted by AMPAM directors to manage and act on behalf of the ESOP. Defendant also notes that while the Policy allows for "any other person or entity in his, her or its capacity as a fiduciary administrator or trustee of a Plan" to be included in the definition of "Insured" by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 25-6047 PA (MARx) | Date | November 5, 2025 |
|---|---|---|---|
| Title | AMPAM Parks Mechanical, Inc. v. Allied World Surplus Lines Insurance Company, et al. | | |

"specific written endorsement attached to this Policy," Plaintiff did not incorporate Brozen into the definition of Insured through any endorsement. (See Motion at pp. 9–10.)

In its Opposition, Plaintiff does not argue that Brozen falls within the definition of an Insured or Insured Person under the Policy. Instead, Plaintiff argues that AMPAM assumed an obligation to defend and indemnify Brozen "under the trust agreement pursuant to which the AMPAM ESOP was established," and that in complying with that obligation in the Lawsuits, AMPAM has incurred Loss arising from a Claim, which Defendant is obligated to pay under the terms of the Policy. (Opp'n at pp. 22–23.) In support of its claim to coverage, Plaintiff points to Exclusion D, which generally excludes coverage for Loss in connection with any Claim alleging, arising out of, based upon or attributable to the liability of others assumed by any Insured, but which makes an exception for liability "assumed in accordance with or under the agreement or declaration of trust pursuant to which a Plan was established[.]" (FAC, Ex. 1 at p. 70.) Plaintiff also points to the Policy's definitions of "Loss" and "Claim" and argues that both are defined broadly and encompass "any damages or Defense Costs that AMPAM must pay which grow out of or have a connection with the Claim made against AMPAM in the [Lawsuits]," including its costs incurred paying for Brozen's defense and indemnification. (Opp'n at pp. 23–24.) Defendant argues in its Reply that it is not obligated to pay AMPAM's costs incurred for Brozen's defense or indemnification because the Policy only provides coverage for "Loss arising from a Claim . . . against [an] Insured for any Wrongful Act," and Wrongful Acts do not include satisfaction of AMPAM's contractual obligations. (Reply at pp. 9–10.)

Considering the facts alleged in the FAC and the allegations in the underlying Lawsuits, and interpreting the applicable Policy provisions within the context of the Policy as a whole, the Court finds that Plaintiff has alleged sufficient facts to plausibly show coverage for its liability assumed on behalf of Brozen under the Trust Agreement. First, the FAC alleges that the liability Plaintiff assumed on behalf of Brozen was assumed under the Trust Agreement pursuant to which the AMPAM ESOP was established. (See FAC ¶ 128.) While the Policy generally excludes coverage for liability that Plaintiff assumed on behalf of others under a contract, Exclusion D carves out an exception for liability assumed under these circumstances, provided such liability would be covered under the Policy. (FAC, Ex. 1 at p. 70.) The Policy provides coverage for "Loss arising from a Claim" against AMPAM and its directors and other employees "for any Wrongful Act," where "Wrongful Act" is defined to include, among other things, any alleged breach of ERISA by AMPAM or its employees. (See id., Ex. 1 at pp. 62, 69.) In both the Lawsuits, each claim asserted against Brozen is an ERISA claim that is also asserted against AMPAM and its directors or other employees. (See FAC ¶¶ 58, 60, 62; Exs. 6, 8, 13, 15.) Those alleged ERISA violations by AMPAM or its directors and employees appear to constitute Wrongful Acts giving rise to a Claim under the Policy, as evidenced by Defendant's alleged acknowledgment of coverage for AMPAM and its directors and employees in both Lawsuits. (See FAC ¶¶ 65–66, 78–80.).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 25-6047 PA (MARx) | Date | November 5, 2025 |
| Title | AMPAM Parks Mechanical, Inc. v. Allied World Surplus Lines Insurance Company, et al. | | |

Moreover, the complaints in both Lawsuits allege that Brozen worked together with AMPAM directors or employees to carry out the alleged scheme in which the AMPAM ESOP purchased company stock at an inflated price at the expense of the ESOP participants. (See FAC, Ex. 6 ¶¶ 8–24, Ex. 8 ¶¶ 8–24.)[4] As Plaintiff argues, the Policy defines "Claim" broadly to include a "written demand for monetary . . . relief made against an Insured," and it defines "Loss" broadly to include, among other things, damages and Defense Costs. Thus, even if Brozen is not an Insured under the Policy, the FAC plausibly alleges that AMPAM's costs incurred defending and indemnifying Brozen for the claims asserted against him, AMPAM, and its directors and employees, may fall within the scope of a Claim under the Policy, and that because AMPAM's liability for Brozen was allegedly assumed under a Trust Agreement pursuant to which the AMPAM ESOP was established, Exclusion D would not bar coverage.

In sum, because the FAC plausibly alleges coverage under the Policy for Brozen's defense and indemnification, the Court concludes that, at least at the pleading stage, Plaintiff alleges sufficient facts to state a claim for declaratory relief and breach of contract against Defendant.[5]

### B.     Endorsement No. 20

The FAC alleges that under the Policy, Defendant "has an obligation to defend and indemnify AMPAM and Approved Insureds . . . for the [Lawsuits] . . . up to the $5 Million Limit of Liability," and that Defendant's reliance on Endorsement No. 20 to limit coverage for the Lawsuits was contrary to law and contrary to the purpose of the Policy. (FAC ¶¶ 5, 143.) On

---

[4]     In fact, in both Lawsuits, the plaintiffs allege that AMPAM directors exerted control over Brozen when he was supposed to be an independent third party, and that the directors used the indemnification provision in the Trust Agreement to "further cement" their control over Brozen. (See FAC, Ex. 6 ¶ 7, Ex. 8 ¶ 7.)

[5]     Defendant argues that Plaintiff waived any argument that, Brozen is an Insured under the terms of the Policy by failing to address this argument in its Opposition. (Reply at pp. 8–9.) While the Court agrees that the Plaintiff has not adequately alleged that Brozen is an Insured under the terms of the Policy, this does not constitute grounds for dismissal because the FAC plausibly alleges a different theory of coverage. See Kan v. Gen. Motors LLC, No. 5:23-CV-01731-JLS-RAO, 2023 WL 11197090, at *1 (C.D. Cal. Nov. 7, 2023) ("A 12(b)(6) motion must seek to dispose of an entire claim."); Hernandez v. Path, No. 12-CV-01515 YGR, 2012 WL 5194120, at *6 n.7 (N.D. Cal. Oct. 19, 2012) ("Federal Rule of Civil Procedure 12(b)(6) is not an appropriate device to eliminate a portion of a claim.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 25-6047 PA (MARx) | Date | November 5, 2025 |
|---|---|---|---|
| Title | AMPAM Parks Mechanical, Inc. v. Allied World Surplus Lines Insurance Company, et al. | | |

this basis, Plaintiff seeks declaratory relief in Count Two and alleges a breach of contract claim in Count Three.

Defendant argues that because Endorsement No. 20, which limits coverage for "Claims arising out of, based upon, or attributable to any actual or alleged violation of any local, state, or federal administrative or regulatory statute, code, rule or regulation, or procedure," to $1 million in Defense Costs, unambiguously limits coverage for the Lawsuits, Plaintiff's claims for declaratory judgment or breach of contract must fail. Specifically, Defendant argues that because the Lawsuits both "allege causes of action for violation of ERISA, a federal statute," they are subject to Endorsement No. 20. (Motion at p. 11.)

Plaintiff argues that Endorsement No. 20 is ambiguous in this case and must therefore be construed in favor of coverage. First, Plaintiff argues that Endorsement No. 20 is internally contradictory because its purports to both exclude coverage and extend coverage. For example, Plaintiff compares the first paragraph of the Endorsement (which amends the definition of "Exclusions" to exclude any claims alleging any statutory violation or bought by a governmental body) to the second paragraph of the Endorsement (which states, "The coverage *provided by* this Endorsement for Defense Costs" (emphasis added) is subject to a $1 million sublimit). Plaintiff argues that these internal contradictions create ambiguity. (Opp'n at pp. 11–13.) Next, Plaintiff argues that to the extent Endorsement No. 20 was meant to extend coverage, the Endorsement is not necessary to provide coverage for Defense Costs incurred in defense of an ERISA claim because such costs were already provided for under the terms of the Policy. Thus, Plaintiff argues, there are multiple reasonable interpretations of Endorsement No. 20, including (i) that it extends coverage for alleged statutory violations excluded elsewhere in the Policy; or (ii) that it provides a catch-all provision for alleged statutory violations to specifically covered or excluded from coverage in the Policy. Plaintiff argues that because Defendant cannot show that its interpretation of Endorsement No. 20 is the only reasonable one, the endorsement is ambiguous and must be construed in favor of coverage. (Id. at pp. 13–14.)

Finally, Plaintiff contends that to the extent Endorsement No. 20 was intended to limit existing coverage, it is a catch-all exclusion that Defendant did not make sufficiently conspicuous, plain, or clear. Plaintiff asserts that the Policy is "rife with specific references to all types of statutes, both in providing coverage and excluding coverage." For example, Plaintiff points to provisions of the Directors & Officers Coverage that specifically exclude coverage for alleged violations of ERISA, the Fair Labor Standards Act, and other federal laws. (Id. at p. 17 (citing FAC, Ex. 1 at pp. 53–54, 57).) Plaintiff also points out that the Policy defines the term "Employee Benefits Law" to mean ERISA "or any similar provision of any federal, state or local statutory law of the United States or any similar common or statutory law of any other jurisdiction anywhere in the world." (Id. at pp. 17–18 (citing FAC, Ex. 1 at p. 64.) Plaintiff argues that Defendant's proposed interpretation of Endorsement No. 20 is the type of overbroad

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 25-6047 PA (MARx) | Date | November 5, 2025 |
|---|---|---|---|
| Title | AMPAM Parks Mechanical, Inc. v. Allied World Surplus Lines Insurance Company, et al. | | |

catch-all exclusion that courts have found ambiguous and unenforceable. (See id. at pp. 14–18.) In its Reply, Defendant argues that Endorsement No. 20 differs from the catch-all exclusions referenced Plaintiff's cited cases and that Plaintiff fails to demonstrate any actual ambiguity in the language of Endorsement No. 20. (Reply at pp. 2–5.)

Under California law, "any provision that takes away or limits coverage reasonably expected by the insured must be 'conspicuous, plain and clear' to be enforceable." Zurich Ins. Co. v. Smart & Final Inc., 996 F. Supp. 979, 987 (C.D. Cal. 1998) (citing State Farm Mut. Auto. Ins. Co. v. Jacober, 10 Cal. 3d 193, 202 (1973); Feurzeig v. Insurance Co. of the West, 59 Cal.App.4th 1276, 1283 (1997); 20th Century Ins. Co. v. Liberty Mutual Ins. Co., 965 F.2d 747, 753 (9th Cir.1992)). "To be plain and clear, the limitation should be precise and understandable." Id. (citations omitted); see also MacKinnon, 31 Cal. 4th at 648 ("[T]he burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language.").

Here, the Court agrees with Plaintiff that, as applied to the facts alleged in this case, Endorsement No. 20 is ambiguous. The Policy specifically provides for coverage for a Loss arising from a Claim against an Insured for a Wrongful Act, where Wrongful Act is defined to include actual or alleged breach of an Employee Benefits Law (defined to mean ERISA or any similar provision of law). (FAC, Ex. 1 at pp. 62, 64, 68.)[6] "Loss" is defined broadly to include, among other things, damages, settlements, judgments, and Defense Costs. (Id. at p. 65.) Endorsement No. 20 does not define the phrase "local, state or federal administrative or regulatory statute, code, rule or regulation, or procedure," nor does it specifically limit coverage for Claims arising out of alleged ERISA violations. Thus, Plaintiff has shown that it had a reasonable expectation of coverage up to the full limitation of liability under the Policy for the ERISA claims asserted in the Lawsuits. Moreover, as Plaintiff asserts, Endorsement No. 20 both amends the Exclusions section of the Policy and describes it as providing coverage, suggesting that the Endorsement could reasonably be read, for instance, to apply a sublimit of coverage in cases involving statutory violations not specifically covered by the Policy.

Defendant fails to show that its interpretation of Endorsement No. 20 is the only reasonable one. Rather, Defendant's interpretation of Endorsement No. 20, which would limit coverage for Claims arising out of any alleged violation of ERISA or any other statute, including statutes for which coverage is specifically provided under the Policy, appears to be overbroad. Further, given that Defendant's interpretation of Endorsement No. 20 limits coverage reasonably expected by Plaintiff, Defendant fails to show that the limitation was sufficiently conspicuous,

---

[6]  The policy also specifically provides for coverage for Loss arising from a HIPAA Claim, defined as a "Claim alleging, arising out of, based upon or attributable to a violation of" the HIPAA, a federal statute. (See id. at pp. 62, 64.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 25-6047 PA (MARx) | Date | November 5, 2025 |
|---|---|---|---|
| Title | AMPAM Parks Mechanical, Inc. v. Allied World Surplus Lines Insurance Company, et al. | | |

plain and clear. As such, Defendant fails to carry its burden, at least at this stage of the proceedings, to show that Endorsement No. 20 unambiguously limits coverage in this case. See Aydin, 18 Cal. 4th at 1183 (burden is on insurer to show claim is excluded from coverage); see also HS Servs., Inc. v. Nationwide Mut. Ins. Co., 109 F.3d 642, 647 (9th Cir. 1997) (in case involving coverage of defamation action where alleged defamation occurred after insured was terminated from employment, refusing to interpret employment-related practices exclusion to bar coverage, reasoning that insurer's interpretation of exclusion "would defeat the reasonable expectation of the insured"); Safeco, 26 Cal. 4th at 763 (concluding that "illegal act" exclusion to homeowners policy did not exclude coverage for wrongful death suit involving accidental death, reasoning that term "illegal" was ambiguous and that construction of term to mean a violation of any law would be so broad as to render policy's liability coverage practically meaningless).[7/] Thus, interpreting Endorsement No. 20 in the context of the Policy as a whole, and construing any ambiguity in favor of the insured, the Court concludes that, at least at the pleading stage, Plaintiff alleges sufficient facts to state claims for declaratory relief and breach of contract against Defendant.

## Conclusion

For all of the foregoing reasons, the Court denies Allied World's Motion to Dismiss. Allied World shall file its Answer to the First Amended Complaint no later than November 20, 2025.

IT IS SO ORDERED.

---

[7/]   Because the Court concludes that Endorsement No. 20 is ambiguous, it does not reach the parties arguments concerning whether Defendant's interpretation of Endorsement No. 20 creates illusory coverage.